*48 OPINION.
Van Fossan :
Two issues are presented and argued by the parties: (1) Did the transactions pursuant to the agreement of October 2, *49 1931, between the Timken-Detroit Co. and Silent Automatic Corporation accomplish a tax-free reorganization as provided in section 112 (b) (4) and (d) (1) of the Kevenue Act of 1928 or 1932,[1] and (2) was the transaction completed and the profit, if any, taxable in 1931 or 1932?
The general principles governing reorganizations have been considered in many cases and need not be discussed at length. There must be a plan of reorganization. There must remain in the trans-feror or its stockholders a real, material, and substantial continuity of interest in the property transferred. It is necessary in certain cases also to determine whether the consideration paid consists of cash and “securities” or cash and “other property.”
The respondent’s' position here is that the transfer of the assets of Silent Automatic for cash of $760,000, a promissory note of $100,-000 and gold debenture notes of a face value of $1,021,700 (fair market value $920,000) did not effect a reorganization because the debenture notes did not represent the retention of a definite and material continuity of interest in the property transferred. He further urges that the debenture notes were not “securities” within the meaning of section 112 (b) (4), but are “other property” within the meaning of section 112 (d).
The petitioners contend that the debenture notes evidenced a definite, substantial and continuing interest of the transferor in the property transferred and were “securities” under the statute.
We disagree with both of respondent’s contentions. The agreement of October 2, 1931, clearly contemplated a plan of reorganization. In exchange for the Silent Automatic assets Timken agreed to give to the former company “cash and securities” aggregating $2,100,000 (later reduced by adjustment). The cash and debenture notes were distributed to the stockholders as provided in section 112 (d) (1). The vital question is whether or not the ownership of the debentures vested in the Silent Automatic or its stockholders a def *50 inite, material and continuing interest in Timken and the property of Silent Automatic transferred to it.
On consideration of the nature of the debentures, the obligations assumed by Timken under the indenture creating them, and the rights conferred on the trustee for the benefit and in protection of the rights of the debenture holders, we are of the opinion that through the debentures the holders retained a definite, material, and continuing interest in the property transferred. Though they were for relatively short terms, the interest conferred by them on their holders was very real.
The debentures were created under a formal indenture. They were unconditionally guaranteed by the Timken-Detroit Axle Co. Under the indenture Timken, undertook to maintain the property in good repair; to make necessary renewals, replacements, and improvements; to keep it insured to full value permitted; to pay and discharge all taxes, assessments, and legal charges, or, if contesting such taxes or charges, to indemnify the trustee for ultimate payment; to furnish a complete annual audit by auditors approved by the trustee; to permit inspection by the trustee. In case of default by the company as to any of the maintenance or insurance provisions, or in the payment of charges or compliance with legal orders, the trustee was empowered to perform the same, make advances therefor, and collect the sums so expended with interest from the company. Furthermore, the company agreed to maintain its corporate life; to provide an office for the payment of principal and interest of the debentures; and to replace the same if any debentures were lost or mutilated.
Respondent emphasizes the fact that the debentures were what he calls “short-term” and from this argues that they fall within the decision of the Supreme Court in Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, in which Cortland Specialty Co. v. Commissioner., 60 Fed. (2d) 937, was cited with approval. In each of these cases the Court held the facts did not spell a reorganization. The transactions involved were held to be sales of assets, not reorganizations. The part of the consideration in question consisted of short term purchase money notes, a very different type of obligation from that here involved.
Although the Supreme Court has never ruled on a transaction involving solely bonds, or bonds and cash, as consideration for the transfer of stock or assets, the Board has held such a transaction to constitute a reorganization. Kaspare Cohn Co., Ltd., 35 B. T. A. 646; Frederick L. Leckie, 37 B. T. A. 252; Frances M. Averill, 37 B. T. A. 485.
That bonds are “securities” was held in Helvering v. Watts, 296 U. S. 387. In Burnham v. Commissioner, 86 Fed. (2d) 776; certiorari denied, 300 U. S. 683, the Court held that unsecured promissory notes *51 due on or before 10 years after date fall within the term “securities.” We believe the debenture notes here involved should be likewise classified. The fact that they were accepted for filing by the Michigan Securities Commission is persuasive. They differed widely in character from the $100,000 note given at the same time, or the purchase money notes involved in the Pinellas and Cortland Specialty cases. The debentures were “securities” rather than “other property” referred to in the statute.
The conclusion we have indicated above is not in conflict with the holding of the Board in George D. Graham, 37 B. T. A. 623. Though the Board there characterized the debentures as “short-term of about six and one-half years,” it is noted that the debentures were in fact called within a year. Moreover, as observed in the opinion, the debentures were not the securities of the company which acquired the assets but those of a third party not a party to the claimed reorganization. We have noted, supra, the.many provisions of the indenture in the instant cases which created a continuing interest in the property transferred. In the Graham case obviously no such condition existed.
On the facts here present we hold that a reorganization was effected. Since the proceeds thereof were distributed, the corporation incurred no tax and petitioners are not liable as transferees.
In view of our decision, it is unnecessary to discuss the remaining issue.
Reviewed by the Board.

Decisions of no transferee liability will be entered.

 SEC. 112. RECOGNITION OB' GAIN OR LOSS.
(a) General rule. — upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.
(b) Exchanges solely in Mnd.—
*******
(4) Same — Gakn op corporation. — No gain or loss shall be recognized if a corporation a party to a reorganization exchanges properly, in pursuant of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.
* * *****
(d) Same — Gain of corporation. — If an exchange would be within the provisions of subsection (b) (4) of this section if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—
(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, * * *.
[The pertinent provisions of the Revenue Acts of 1928 and 1932 are identical.]