### TRANSAMERICA CORPORATION v. LEWIS, Collector of Internal Revenue.
### No. 20392–R.

District Court, N. D. California, S. D.

Aug. 9, 1939.

Claude I. Parker and Bayley Kohlmeier, both of Los Angeles, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty. both of San Francisco, Cal., for defendant.

ROCHE, District Judge.

Plaintiff seeks recovery of documentary stamp taxes assessed and collected under the provisions of Title VIII, Section 800, Schedule A(3) of the Revenue Act of 1926, as amended by Section 723 of the Revenue Act of 1932, 26 U.S.C.A. §§ 902 (b), 921(b) (1). The taxes were imposed by defendant, as Collector of Internal Revenue, upon a transaction whereby plaintiff, on August 6, 1935, purchased 361,202 shares of its capital stock. On March 26, 1936, plaintiff retired these shares of stock. The procedural steps up to the time of retirement are shown by plaintiff's deposition to be as follows:

The president of plaintiff corporation authorized the purchase of the above shares of stock for retirement, and made public announcement through newspapers during the first week of September, 1935, that these and other shares were to be cancelled and extinguished. The 361,202 shares were forwarded to Chase National Bank of New York under restricted registration, pursuant to the instructions of the New York Stock Exchange. Meanwhile the stock was carried on the plaintiff's books as Treasury Stock. At the first meeting of the board of directors after the purchase of stock, held in January 1936, the retirement of the stock was recommended by resolution, which was approved by a stockholders' meeting on March 26, 1936, on which date the shares of stock were cancelled and extinguished.

Under this set of facts, plaintiff insists that it is entitled to recover the stamp taxes. Plaintiff argues that no sale or transfer within the meaning of the stamp tax provisions has taken place, and as a corollary, that the transaction in which it has engaged is specifically exempt from taxability by reason of Treasury Department Regulation 71 (1932), Article 35 f, which reads:

"The following are examples of transactions not subject to the tax:

* * *

"f. The surrender of stock for extinguishment * * *"

Regulation 71 of the Treasury Department has been operative since 1918 without material change. During this same period the revenue law to which Regulation 71 applies has been frequently reenacted. Therefore the Regulation has the effect of law. Helvering v. Watts, 1935, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289; United States v. Cerecedo Hermanosy Compania, 1908, 209 U.S. 337, 28 S.Ct. 532, 52 L.Ed. 821; White v. Aronson, 1937, 302 U.S. 16, 58 S.Ct. 95, 82 L.Ed. 20, and other cases cited in Martin Co. v. United States, 1937, D.C., 21 F.Supp. 562, 564.

A recent and controlling interpretation of this Regulation was made in the case of Martin Co. v. United States, above. There, the Glenn L. Martin Co. was allowed to recover stamp taxes under circumstances which differ from those in the principal case in only two particulars. In the Martin case the surrendered stock was donated to the company (although consideration was recited), and the stock was not listed as treasury stock before its retirement—but was marked for cancellation; otherwise the facts were substantially the same as those now before the court. It is true that Judge Chesnut mentioned both these points of difference in the Martin case, but he did so only because they were facts which tended to show that the stock was obtained solely for purposes of extinguishment. Had he been convinced, as the present court now is, that the evidence pointed toward the acquisition of stock for the purpose of cancellation and retirement, his decision would undoubtedly have been the same, even though the extinguished stock had been acquired for consideration and, had been temporarily listed as treasury stock until such time as the directors and stockholders, in the normal course of business, could have completed the steps necessary for the orderly extinguishment of it. Although the dictum stressed the fact that the surrendered stock was not treated as

treasury stock prior to its retirement, this bookkeeping method is of little significance in California, in which state sufficient restrictions are applied to treasury stock so as to limit its disposal in much the same manner as is done to the original issuance and sale of stock. Under such a law, a mere difference in accounting practices would not justify a different holding in the case at bar from the Martin case. See California Corporate Securities Act, §§ 2–7 (St.Cal. 1917, p. 673); Ballantine and Sterling-California Corporation Laws (1938 Ed.) § 199, p. 182.[1]

Upon a consideration of all the facts pointing toward a transaction solely for the extinguishment of stock, and on the strength of the ruling in Martin v. United States, above, as applied to the present set of facts, this court holds that plaintiff does not come within the stamp tax provisions of Title VIII, Section 800, Schedule A(3) of the Revenue Act of 1926, as amended by Section 723 of the Revenue Act of 1932, and is therefore entitled to a judgment against the defendant, together with the costs of this action.

---

[1] "Treasury shares are for most purposes treated like shares which have been restored to the status of authorized but unissued shares."

"The sale of 'treasury stock' is treated under the California Corporate Securities Act as the issue of a security and requires a permit from the commissioner of corporations." P. 184.