COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

D. J. CONDIT, Respondent.

No. 7609.

United States Court of Appeals
Tenth Circuit.

June 19, 1964.

Crombie J. D. Garrett, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, were with him on the brief), for petitioner.

Lowry McKee, Tulsa, Okl., for respondent.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

1. 40 T.C. 24.

BREITENSTEIN, Circuit Judge.

The Commissioner seeks review of a Tax Court decision[1] allowing taxpayer Condit a deduction in the amount of $6,100 as a loss "incurred in any transaction entered into for profit, though not connected with a trade or business."[2]

The facts are undisputed. Taxpayer and one Conard agreed in 1954 to open a store in Tulsa and to share equally the profits and losses. Taxpayer was a manufacturer's representative and Conard was in the general construction business. Two corporations were formed. One, The Dorman Company (Dorman), owned the land and building where the business was located and the other, John E. Burks, Inc. (Burks, Inc.), operated the business. Taxpayer loaned Dorman $10,500 secured by a second mortgage on the company property. Burks, Inc., borrowed $30,000 from a bank and $6,000 from one Boswell. Payment of the loans to Burks, Inc., was guaranteed by taxpayer and Conard.

The business was unsuccessful. Taxpayer wanted to stop operations in February, 1956, but Conard was more optimistic and desired to continue. In August, 1956, they decided to liquidate. Conard, personally, advanced to Burks, Inc., $17,600, of which $10,000 was advanced after taxpayer suggested closing the business. Taxpayer did not guarantee repayment of any of the $17,600 advanced by Conard.

By written agreement dated February 19, 1957, Conard and taxpayer fixed the Burks, Inc., loss at $47,000. Of this, $20,000 was the balance due on the bank loan, $5,800, the balance due on the Boswell loan, $17,600, the advances by Conard to Burks, Inc., and $3,600, a Western Auto account, payment of which was guaranteed by taxpayer and Conard. It was agreed that taxpayer should not share in the $10,000 loss by Conard on advances by him after taxpayer wished to terminate the business. Taxpayer agreed to assign his stock in the two

2. Section 165(c) (2), Internal Revenue Code of 1954, 26 U.S.C. § 165(c) (2).

companies to Conard and Conard agreed to attend to the final liquidation of Burks, Inc. Taxpayer agreed to bear his one-half of the $37,000 by the payment of $6,600 on the bank loan, by assuming full responsibility for payment of the $5,800 balance on the Boswell loan, and by a reduction of $6,100 in the Dorman second mortgage. Because Conard owned all the Dorman stock the $6,100 reduction was, in effect, a payment of that amount to Conard.

In his 1957 income tax return taxpayer claimed the $6,100 item as an ordinary loss deduction under § 165(c) (2). The Commissioner disallowed the deduction, ruling that the loss was a nonbusiness bad debt under § 166(d).[3] A deficiency of $2,238.31 was assessed. Taxpayer petitioned the Tax Court for redetermination of the deficiency. The Tax Court held that the taxpayer was entitled under § 165(c) (2) to deduct the transfer of $6,100 to Conard in full as a loss incurred in a transaction entered into for profit.[4]

In his petition for review the Commissioner says that the $6,100 item is not deductible under § 165(c) (2) but must be treated as a nonbusiness debt under § 166(d) or alternatively as a capital loss under § 165(f).[5] The capital loss argument merits little consideration. This ground was not mentioned in the assessment of deficiency, was not plead in the Tax Court, and is not sustained by any proof of a sale or exchange. As we see the situation, the controlling question is whether the $6,100 loss is deductible under § 165(c) (2) as a loss "incurred in any transaction entered into for profit" or under § 166(d) as a nonbusiness bad debt.

The Commissioner relies on Putnam v. Commissioner, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144, and Whipple v. Commissioner, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288. Each case is distinguishable. Putnam was concerned with a payment by a taxpayer as guarantor of a corporation obligation. The Court held that the deduction was not allowable as a loss incurred in a transaction for profit but was allowable as a nonbusiness bad debt.[6] The theory of the Court was that under the doctrine of subrogation the payment by a guarantor does not create a new debt and extinguish the original debt but preserves the original debt and substitutes the guarantor for the creditor.[7] So far as the $6,100 is concerned in the case at bar, no guaranty or subrogation is shown.

In Whipple the taxpayer sought to deduct, as business bad debts, advances made by him to a corporation which he controlled and in which he had management responsibility. The Court commented that the devotion of one's time and energies to the affairs of a corporation is not of itself a trade or business of the person so engaged and remanded the case for consideration of whether certain advances were incurred in the taxpayer's business of being a landlord. In the case at bar no claim is made for deduction as a business debt and no showing is made that the taxpayer ever advanced any money to the corporation.

Skarda v. Commissioner, 10 Cir., 250 F.2d 429, is not in point. There, as in Whipple, the question presented was the distinction between a business bad debt and a nonbusiness bad debt.

The taxpayer points out that the Commissioner in his answer to the amend-

---

3. A nonbusiness bad debt is "considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months." See § 166 (d) (1) (B).

4. The Tax Court also considered the treatment of the assignment by taxpayer of his Dorman stock to Conard. No issue is now made of this portion of the Tax Court decision.

5. Section 165(f) refers to losses "from sales or exchanges of capital assets."

6. The claim of deduction was made under § 23(e) (2) of the Internal Revenue Code of 1939 which was substantially the same as § 165(c) (2). The nonbusiness debt provision corresponding to the present § 166(d) was § 23(k) (4) of the Internal Revenue Code of 1939.

7. 352 U.S. 88–89, 77 S.Ct. 175.

ment of the petition in the Tax Court said:

> "[Commissioner] Admits that the petitioner's purpose in assigning his stock and note receivable to Conard was to be relieved from personal liability as guarantor on debts of John E. Burks, Inc. to the Brookside State Bank and Western Auto Company, * * *."

On the basis of this admission the taxpayer says that the case is governed by the decisions in Marjorie Fleming Lloyd-Smith v. Commissioner, 40 B.T.A. 214;[8] J. J. Shea v. Commissioner, 36 T.C. 577, affirmed per curiam, 5 Cir., 327 F.2d 1002; and Eugene H. Rietzke v. Commissioner, 40 T.C. 443, appeal to Fourth Circuit dismissed on stipulation.[9] These decisions hold, in differing fact situations, that a payment to be relieved from liability as a guarantor is deductible as a loss incurred in a transaction entered into for profit. The Commissioner attempts to distinguish these cases on the facts and frankly submits that the decision in Shea is incorrect.

The Tax Court said that Putnam was not applicable because the $6,100 item was not the payment of an obligation as a guarantor and because taxpayer was not entitled to subrogation. It found that the transaction between taxpayer and Conard was entered into for profit and held that the governing principles are stated in Shea and Lloyd-Smith. We believe that in the case at bar the taxpayer is in a more favorable position than were the taxpayers in those two cases.

The Commissioner does not argue that taxpayer is entitled to no deduction. If the deduction does not lie under the nonbusiness debt provisions of § 166(d), it comes within the provision of § 165(c)(2) relating to losses incurred in any transaction entered into for profit.

Section 166(d) applies to worthless nonbusiness debts. Here the worthless debts are those owed by Burks, Inc. Taxpayer had advanced no money to Burks, Inc. He was a guarantor on debts of Burks, Inc., to the bank, to Boswell, and to Western Auto. He was not a guarantor of the debts of Burks, Inc., to Conard. The payment of the Western Auto debt was assumed by Conard. Taxpayer paid part of the bank loan and the balance due on the Boswell loan; and he concedes that these payments must be taken as nonbusiness bad debt deductions.

Apart from his guaranties the only pertinent obligation of taxpayer was to Conard. That obligation was uncertain and the amount unliquidated. The Commissioner argues that because of the incorporation of the business, the losses arose from the payment of the debts of the corporation and disregards the preceding venture agreement in which taxpayer and Conard agreed to share the profits and losses equally. We are not convinced. This is not a case in which taxpayer has loaned money to a corporation and claims that the debt so incurred is his business debt; and it is not a case in which taxpayer seeks a deduction, as an ordinary loss, of a payment made by him of a corporate debt which he has guaranteed.

The situation is that taxpayer and Conard entered into a venture for profit and the venture failed. They settled between themselves the manner in which the losses were to be shared. By the assumption of certain payments on debts guaranteed by him and Conard and by the payment of $6,100, taxpayer attained three objectives. Conard assumed payment of certain of taxpayer's guaranties; taxpayer settled his obligations to Conard; and Conard assumed the responsibility of winding up the affairs of Burks, Inc. In our opinion the $6,100

---

8. Affirmed on other points, Lloyd-Smith v. Commissioner, 2 Cir., 116 F.2d 642, certiorari denied 313 U.S. 588, 61 S.Ct. 1111.

9. See P–H, Federal Tax Serv., Current Decisions, ¶ 56,358.

payment was not the payment of a debt within the purview of § 166(d) but rather a loss incurred in a transaction for profit within the meaning of § 165(c) (2).

The decision of the Tax Court is affirmed.