### BURNHAM v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5937.

Circuit Court of Appeals, Seventh Circuit.

Dec. 8, 1936.

Arthur R. Baar and Arthur R. Foss, both of Chicago, Ill., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and J. Louis Monarch and Harry Marselli, Sp. Assts. to the Atty. Gen., for respondent.

Before SPARKS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

SPARKS, Circuit Judge.

This is an appeal from a decision of the Board of Tax Appeals, involving deductible losses under section 112(b) (3) of the Revenue Act of 1928 (26 U.S.C.A. § 112(b) (3) and note). Certain creditors of a corporation, which was undergoing recapitalization, were also its principal stockholders and held the company's promissory note. They exchanged these notes for new stock of the corporation. The Board held that they were not entitled to deduct as a loss the difference between the unpaid principal of the notes and the stipulated value of the new stock as of the date of the exchange.

The petitioning taxpayer and his brother owned in equal parts all but two shares of the capital stock of the Courts Building Corporation. In addition they and their wives held the notes of the corporation in the principal amount of $668,000, payable ten years after date. In 1929 it became necessary to refinance the outstanding obligations of the corporation, consisting of a first mortgage indebtedness of $4,500,000, general mortgage bonds of $425,000, junior mortgage bonds of $599,000, and the notes above mentioned. A plan was devised for the recapitalization of the corporation whereby 177,000 shares of new stock of no par value were to be issued in place of the 5,000 shares of old stock of $100 par value. 150,000 of these shares were to be Class A common stock to be exchanged for the 5,000 shares of original stock at the rate of thirty for one. Taxpayer and his brother made an agreement that each would assign 16,579 of the 74,970 shares to be received by him, to be used in the process of reorganization. 20,000 were to be Class A preferred, to be sold by an underwriter, and 7,000 shares of Class B common, to be exchanged for the notes held by taxpayer, his brother, and their wives. These notes, with the interest then accrued, amounted at that time to $700,000. It was stipulated that the Class B common stock had a market value of $66 a share. It is as to this difference between the amount due on the notes exchanged and the value of the stock accepted in exchange that petitioner claims a deduction for loss.

Section 112(b) (3) of the Revenue Act of 1928 (26 U.S.C.A. § 112(b) (3) and note) under which this case arises, provides as follows: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation." Section 112 (i) (26 U.S.C.A. § 112 note) defines reorganization to include, among other things, a recapitalization.

It is clear from the facts that the transaction involved an exchange of promissory notes of the corporation, given prior to recapitalization, for stock of the corporation upon recapitalization. The question is whether those promissory notes constitute "securities" within the meaning of section 112(b) (3). Petitioner relies upon two cases to support his contention that the notes were not such securities. In Pinellas Ice Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 259, 77 L.Ed. 428, the Court held that a sale by one corporation to another of all its assets for a money consideration, to be

paid partly in cash, and the balance in instalments evidenced by short-term promissory notes, did not constitute an exchange of property for cash and securities by a party to a reorganization. To the same effect was the case, Cortland Co. v. Commissioner (C.C.A.) 60 F.(2d) 937, 940, referred to with approval in the Pinellas Case. In both those cases, corporate taxpayers sought to secure the exemption from recognition of gain permitted by section 203(b) (3) of the Act of 1926 (44 Stat. 12) in the case of a corporation a party to a reorganization which exchanges property in pursuance of the plan of reorganization solely for stock or securities in another corporation a party to the reorganization. The Court in both cases held that the transactions there involved were sales rather than reorganizations, hence the taxpayers were not entitled to the exemption claimed. It is obvious that both Courts based their decisions not so·much on the ground that the short-term purchase money notes were not securities as that the transactions involved were not reorganizations.

Section 203(a) of the Act of 1926 (44 Stat. 12) and section 112(a) of the Act of 1928 (26 U.S.C.A. § 112(a) and note) both provide that as a general rule, upon the sale or exchange of property, the entire amount of the gain or loss shall be recognized. Subsection (b) of each section then provides certain exceptions in the case of exchanges solely in kind, where no gain or loss shall bé recognized. It is obvious 'that in the case of an outright sale, whether the purchase price was to be paid in cash at the time of delivery of the property, or in instalment payments, gain or loss was to be determined and recognized in computing the net income. The Supreme Court in the Pinellas Case held that there was there involved such an outright sale that the taking of the short-term notes of the vendee gave the vendor no interest in the affairs of the vendee more definite than that incident to ownership of its short-term notes. It is true that the Court said in this connection, "These notes—mere evidence of obligation to pay the purchase price—were not securities within the intendment of the act and were properly regarded as the equivalent of cash. It would require clear language to lead us to conclude that Congress intended to grant exemption to one who sells property and for the purchase price accepts well secured, short-term notes (all payable within four months), when another who makes a like sale and receives cash certainly would be taxed. * * * In substance the petitioner sold for the equivalent of cash; the gain must be recognized. * * * Certainly, we think that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes."

We think it can not be said that this case holds that no promissory note can be considered a "security" within the meaning of section 203(b) or its counterpart, 112 (b). We construe it to mean merely that under the facts there presented, the notes involved were·not to be considered such securities.

Petitioner argues that by using the term "securities" in direct connection with the term "stock," Congress indicated that it was thereby referring to types of obligations which have dignity and formality at least similar to, if not equal to, that of shares of stock. We think it can not be said that long-term, promissory notes are not of sufficient dignity and formality to be called securities. In fact, it is stated in the opinion of the Board of Tax Appeals that petitioners there conceded that the word, as generally used, might be broad enough to include such notes, since, when so used, it means something given to make certain the fulfillment of an obligation, the evidence of a debt or of property. The transaction involved simply the exchange of one form of security, the promissory note, for another, the Class B stock. The Court of Appeals for the Second Circuit, in the Cortland Case, supra, observed, "In defining 'reorganization,' section 203 of the Revenue Act gives the widest room for all kinds of changes in corporate structure, but does not abandon the primary requisite that there must be some continuity of interest on the part of the transferor corporation or its stockholders in order to secure exemption. Reorganization presupposes continuance of business under modified corporate forms. * * * The word 'securities' was used so as not to defeat the exemption in cases where the interest of the transferor was carried over to the new corporation in some form." Here, we unquestionably have an interest of the petitioner in the corporation prior to its recapitalization as evidenced by its long-term notes; upon the recapitalization we see that interest exchanged for shares of stock. But the same party holds ᛫

the interest, although it is carried over to the recapitalized corporation in changed form.

We conclude, therefore, that there was no error in the holding of the Board of Tax Appeals that petitioner was not entitled to deduct as a loss the difference between the unpaid principal of the notes and the stipulated value of the new stock as of the date of the exchange, and the decision of the Board of Tax Appeals is

Affirmed.