CLARENCE J. SCHOO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GRACE HARWOOD SCHOO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 109203, 109307. Promulgated August 5, 1942.

*George E. Cleary, Esq.*, for the petitioners.
*Charles P. Reilly, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The Commissioner determined deficiencies in income tax for 1939 of $130,296.18 as to Clarence J. Schoo and $15,091.97 as to Grace Harwood Schoo, his wife, holding that an exchange of preferred shares for debenture bonds of the same corporation was a partial liquidation resulting in gain. The petitioners contend that the exchange was pursuant to a plan of reorganization, gain from which is not recognized.

The facts are all stipulated and it is only necessary to recite those in the husband's case. The petitioners resided in Springfield, Massachusetts, and filed their returns with the collector at Boston.

Before September 5, 1939, petitioner owned some common shares and 2,400 shares of 7 percent preferred, $100 par, of the Longview Fibre Co. Pursuant to a plan of reorganization, he exchanged the preferred for newly issued 7 percent debenture bonds of the same face value, the fair market value being the same. He received no cash.

The plan of reorganization was not occasioned by a prospective transaction which would involve gain to its shareholders or the corporation, but was borne of a genuine desire and intent to reform the capital structure of the corporation. Instead of 36,000 outstanding 7 percent preferred (50,000 authorized) and 68,000 outstanding, no par common (100,000 authorized), the plan was to authorize 200,000 $25 par value 5 percent preferred and 400,000 $7.50 par value common; to substitute 4 new 5 percent preferred shares for each outstanding old 7 percent preferred share, and to substitute four new $25 par common shares for each outstanding old no par common share, and to exchange a newly authorized 25-year debenture bond ($3,600,000 authorized) for each outstanding old 7 percent preferred share or for each four outstanding new 5 percent preferred shares. As stated by the president to the shareholders:

Your Board of Directors believes that the effecting of the proposed reorganization of the corporation will be advantageous to the corporation and its shareholders. It is believed that splitting the shares will facilitate negotiability, particularly if the same be at any time listed. The change of the shares of Common Stock from shares without par value to shares of a par value of $7.50 will reduce the transfer taxes which will be exacted upon the transfer of shares of Common Stock and is in line with the present practice of other corporations. The purpose of the change in the Preferred Stock is to make available to the

corporation a 5% Preferred Stock of low par value which may be used, if deemed advisable, for the payment of dividends on the Common Stock.

The issue of 25-year Income Debenture Bonds will result in a tax saving to the corporation. It has been deemed advisable to issue these securities to the holders of the Preferred Stock of the corporation (solely in exchange for shares of Preferred Stock) rather than to have outstanding two different classes of Preferred Stock. Preferred stockholders who do not exchange their shares for the new 25-year Income Debenture Bonds will have four times the number of shares of Preferred Stock previously held, although the dividend rate thereon will be cut from 7% to 5% per annum, and the said shares will be in accordance with the terms of the proposed amendment to the Certificate of Incorporation, copy of which is attached.

88.88 percent of the 7 percent preferred shares was held by persons who owned 71.54 percent of the common shares. All the holders of old 7 percent preferred shares, including petitioner, made the exchange for debentures.

It can hardly be disputed that the readjustment of the corporation's common and preferred shares was a recapitalization, *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194, or that the exchange of the debentures for the preferred was an integral part of the plan. There is no reason to consider it as if it stood separately. The 25-year debentures were "securities", *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462. Stated, therefore, in terms of section 112 (b) (3), stock in a corporation was, in pursuance of a plan of recapitalization, exchanged solely for securities in such corporation.

The respondent contends that the statutory word "recapitalization" may not be read as meaning a type of statutory "reorganization" unless through it persists a continuation of the same proprietary interest; and that a substitution of bonds for shares breaks the proprietary interest and substitutes a creditor interest. To support this argument, reliance is principally placed on *LeTulle* v. *Scofield*, 308 U. S. 415. This, however, is to take the *LeTulle* case out of its setting in the consideration of a "merger or consolidation" of two corporations under subdivision (A), and to apply it to a recapitalization of a single corporation. As a contemplated result of the "merger or consolidation" of two corporations, the individual taxpayer, for his shares in one of the corporations and other properties, received cash and bonds of the other corporation. This was something substantially different from what he gave up. It was not a mere reshaping of his interest in the same corporation through a recapitalization. In the present case, the substitution of the debentures for the preferred shares was in substance not so much of a change as the words imply. In both, the holder was entitled only to dividends or interest out of income, and had no greater rights than unsecured creditors.

The respondent argues that the petitioner's receipt of the bonds was a liquidation distribution, as defined in section 115 (i), so that

the value of the bonds is to be treated as in full payment for the preferred shares, with resulting gain, citing section 115 (c). This, however, would be in disregard of the sentence in that subsection that the gain to the distributee shall be recognized only to the extent provided in section 112, and section 112 (b) (3) forbids the recognition of any gain in a recapitalization exchange of stock solely for securities.

There is nothing in the circumstances to invite the doctrine of *Gregory* v. *Helvering*, 293 U. S. 465. No transaction was impending which threatened a tax on any of the participants. The recapitalization is not a sham or an artificial detour around a taxable event. There is nothing to indicate that a devious form of corporate maneuvering was masquerading as a recapitalization in order to avoid a tax which would have been assessed if the transaction had been permitted to take its direct course.

*Decision will be entered for the petitioners.*